R. Joseph Barton (SBN 212340)
BARTON & DOWNES LLP
1633 Connecticut Ave., N.W. Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@bartondownes.com
*Counsel for the Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA TRUONG, | Case No.: 8:23-cv-01384-SB-BFM |
| Plaintiff, | |
| v. | |
| KPC HEALTHCARE, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, KALI PRADIP CHAUDHURI, AMELIA HIPPERT, WILLIAM E. THOMAS, LORI VAN ARSDALE, and ALERUS FINANCIAL, N.A. | **AMENDED COMPLAINT FOR VIOLATIONS OF ERISA** |
| Defendants. | |

COMPLAINT

## I.     JURISDICTION AND VENUE

1.      Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

2.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and all Defendants, except Alerus Financial, N.A., may be found in this District.

## II.     INTRODUCTION

3.      This ERISA action is brought by Plaintiff, a participant in the KPC Healthcare, Inc. Employee Stock Ownership Plan ("the KPC ESOP", "ESOP", or "Plan") to obtain disclosures and information concerning her rights and benefits in the ESOP.  Prior to December 2021, the KPC ESOP owned 100% of the stock of KPC Healthcare, Inc.

4.      In August 2022, the KPC Healthcare, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") first officially announced to ESOP participants that the ESOP Trustee had sold the ESOP's stock on December 29, 2021 (the "2021 Transaction").  The ESOP Committee informed ESOP participants that the proceeds from the sale would be distributed eventually to the ESOP participants, but did not and has never disclosed the price – by per share or total transaction – of the 2021 Transaction. Nor did the ESOP Committee (or any fiduciary of the ESOP) disclose that the 2021 Transaction involved a sale of the ESOP's stock to Dr. Chaudhuri (through an entity he owned and controlled), who was also the Chairman of the Board and a fiduciary of the ESOP. To date, the proceeds from the 2021 Transaction have not been distributed to the ESOP Participants.

5.     Simultaneously with the 2021 Transaction, KPC amended a number of terms of the Plan, including those involving the timing and manner of distribution and amended the Plan to convert it from an ESOP to a Profit Sharing Plan. Neither the fact of that amendment nor the terms of those amendments have been disclosed to participants in the plan.

6.     The ESOP Committee, which serves as the Plan Administrator, failed to provide disclosures required by ERISA. Despite two material amendments to Plan (in 2017 and in 2021), the Plan Administrator had not updated the Summary Plan Description—the information that is actually provided to participants about the Plan—from September 1, 2017 (nearly 6 years ago) until after this lawsuit was filed.  The Plan Administrator has delayed in filing the most recent annual report— due in March 2023—with the United States Department of Labor, which would have been the first annual report that provided some information about the 2021 Transaction.  Prior to filing this lawsuit, Plaintiff sought to obtain a copy of various documents, including the valuation/appraisal report that set the price that the ESOP received for the shares in the 2021 Transaction and the valuation/appraisal report that determined the value of her benefits, but the Plan Administrator refused to provide copies of those reports.

7.     Through this action, Plaintiff seeks to enforce her rights in the Plan under ERISA and to ensure that the Plan and its assets have been properly administered. Among the relief sought for these breaches and violations, Plaintiff requests that the breaching fiduciaries be ordered to make the disclosures that they were legally obligated to make, pay the statutory amounts that they are required to pay for failing to make such disclosures, and other remedial and equitable relief.

## III.   INTRA-DISTRICT ASSIGNMENT

8.     Plaintiff resides in the Southern Division of the Central District of California.

9.      Based on Plaintiff's counsel's investigation, all of defendants, except for Alerus Financial, N.A. reside in the Eastern Division of the Central District of California and Alerus Financial, N.A. is located outside the State of California.

10.     The alleged breaches took place in the Eastern Division of the Central District of California or alternatively the Southern Division of the Central District of California.

## IV.   PARTIES

### Plaintiff

11.     Plaintiff Sandra Truong is a former employee of KPC Healthcare. Plaintiff Truong was employed starting as a Clinic Social Worker and then Manager of Social Services by KPC Healthcare from May 16, 1988, through March 1, 2019 at the Orange County Global Medical Center in Santa Ana, California. As a result of her employment, Plaintiff Truong became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KPC ESOP because she still has an account in the ESOP and also because she has a colorable claim for additional benefits under the Plan. Plaintiff Truong resides in Irvine, California.

### Defendants

#### *The Committee*

12.     Defendant KPC Healthcare, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") is identified as the plan administrator in the the written instrument of the Plan (colloquially known as the "Plan Document") within the meaning of ERISA § 3(16)(A), 29 U.S.C § 1002(16)(A). Pursuant to Section 11.15 of the written instrument of the Plan, the ESOP Committee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The ESOP Committee meets the definition of a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9) because ERISA defines the term person broadly and because a committee meets the definition of an association or an

COMPLAINT                                                                          4

unincorporated organization. Based on the statement in the summary plan description of the Plan issued in 2017 (the "2017 SPD") identifying the address of KPC Healthcare Holdings, Inc. (the "Company" or "KPC Healthcare"), the Committee's address is believed to be 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

13.     The "Committee Defendants" means the ESOP Committee and the members of the Committee. According to the notes to the financial statements in Form 5500s filed with the United States Department of Labor, all members of the Board of Directors of KPC Healthcare serve and have served on the ESOP Committee. As a result of the ESOP Committee being designated as the Plan Administrator and a named fiduciary of the ESOP under the terms of the Plan, and because the ESOP Committee and its members having discretionary authority or responsibility for the administration of the Plan, the ESOP Committee and its members are and were fiduciaries of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

*ESOP Committee Members*

14.     Defendant Kali Pradip Chaudhuri ("Dr. Chaudhuri") is the Chief Executive Officer of KPC Healthcare and the chairman of its board of directors. According to unverified responses to Interrogatories by Defendants, Dr. Chaudhuri has been a member of the Board of Directors and a member of the ESOP Committee from July 2015 through the present. By virtue of his membership on the KPC Healthcare Board of Directors and his membership on the ESOP Committee, Dr. Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2015 Transaction. Dr. Chaudhuri resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

15.     Defendant Amelia Hippert has been a member of the KPC Healthcare Board of Directors. According to unverified responses to Interrogatories by

Defendants (including Ms. Hippert), Ms. Hippert was a member of the Board of Directors and a member of the ESOP Committee from May 2016 through November 2023. By virtue of her membership on the KPC Healthcare Board of Directors, and in turn, membership on the ESOP Committee, Amelia Hippert has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Amelia Hippert resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

16.    Defendant William E. Thomas is the Secretary and General Counsel of KPC Healthcare, in-house counsel for KPC Healthcare, and a member of the Board of Directors of KPC Healthcare. According to unverified responses to Interrogatories by Defendants, Mr. Thomas has been a member of the Board of Directors and a member of the ESOP Committee from July 2015 through the present. Defendant Thomas has been Dr. Chaudhuri's long-standing attorney. By virtue of his membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, William E. Thomas is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Upon information and belief, Defendant Thomas resides in Riverside County (i.e. the Eastern Division of this District).

17.    Defendant Lori Van Arsdale is or was a member of the KPC Healthcare Board of Directors. According to unverified responses to Interrogatories by Defendants (including Ms. Van Arsdale), Ms. Arsdale was a member of the Board of Directors and a member of the ESOP Committee from September 2018 through November 2023. By virtue of her membership on the KPC Healthcare Board of Directors, and in turn, membership on the ESOP Committee, Lori Van Arsdale has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Defendant Van Arsdale resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

*Trustee*

18.     Alerus Financial, N.A. ("Alerus") was appointed as the Trustee of the KPC ESOP pursuant to the KPC Healthcare, Inc. Employee Stock Ownership Trust dated April 1, 2015 (the "Trust Agreement") and continued to be the Trustee of the KPC ESOP at least through the 2021 Transaction.  Pursuant to Section 11.15 of the written instrument of the Plan, the Trustee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102.  As a result of being the Trustee of the KPC ESOP, Alerus has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Alerus is headquartered in Grand Forks, North Dakota.

**Relevant Non-Parties**

19.     KPC Healthcare Holdings, Inc. is and has been a California Corporation with its principal place of business in Riverside, California (according to the Summary Plan Description) or Corona, California (according to statements of information filed with the California Secretary of State). Since the inception of the ESOP, KPC Healthcare has been the sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Pursuant to KPC Healthcare's authority to appoint and remove other fiduciaries of the ESOP, including the Trustee and the members of the ESOP Committee, KPC Healthcare is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The most recent version of the Summary Plan Description for the ESOP identifies KPC Healthcare's address as 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

20.     KPC Healthcare, Inc. Employee Stock Ownership Plan, a/k/a the KPC Healthcare, Inc. ESOP or the KPC ESOP, is or was an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The ESOP purported to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) and an employee stock ownership plan under ERISA

§ 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument, within the meaning of ERISA § 402, 29 U.S.C. §1102, by which the Plan is maintained is the KPC Healthcare, Inc. Employee Stock Ownership Plan (the "Plan Document"), effective as of April 1, 2015. As of December 29, 2021, the ESOP was renamed the KPC Healthcare Inc. Profit Sharing Plan.  The Profit Sharing Plan continues to be a defined contribution plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The written instrument of the Profit Sharing Plan is still the 2015 Plan Document (as amended). As the Plan Administer is located in Riverside, California, the Plan is also believed to be administered in Riverside, California.

## V.    FACTUAL ALLEGATIONS

21.    According to the most-recently filed Form 5500, which is the 2020 Form 5500 (which was filed on September 7, 2022), the ESOP purchased 100% of the shares of KPC Healthcare Holdings, Inc. on August 28, 2015 from Defendant Dr. Chaudhuri (the "2015 Transaction").

22.    From August 28, 2015 until at least December 29, 2021, the ESOP owned 100% of the shares of KPC.

23.    Despite his sale of KPC to the ESOP in 2015, Dr. Chaudhuri continued to exercise operational control over KPC Healthcare both directly and through a group of personally loyal insiders he installed as directors of the Company. According to a Statement of Information filed with the California Secretary of State on March 7, 2019, Dr. Chaudhuri is the CEO of KPC Healthcare as well as the Chairman of the Board.  According to a Statement of Information filed with the California Secretary of State dated September 7, 2022, Dr. Chaudhuri remains the CEO of KPC Healthcare. Upon information and belief, Dr. Chaudhuri remains the Chairman of the Board.

24.    According to the most-recently filed Form 5500, which is the 2020

Form 5500, the ESOP Committee consists of all members of the Board of KPC.

25.     In a letter dated August 24, 2022 from the "KPC Healthcare, Inc. ESOP Committee" to ESOP participants, the ESOP Committee disclosed that the ESOP "Trustee, acting on behalf of the ESOP, [had] sold the Company stock to Victor Valley Hospital Acquisition, Inc., a KPC affiliate, on December 29, 2021." Upon information and belief, this was the first participant-wide communication about the sale of KPC stock by the ESOP (the "2021 Transaction").

26.     The August 24, 2022 letter from the KPC ESOP Committee also explained that the assets from the sale would not be distributed to participants until after the IRS had issued a favorable determination and "all Plan assets ha[d] been marshalled."

27.     While the August 24, 2022 letter disclosed that the sale was to "a KPC affiliate," it did not disclose the owner of Victor Valley Hospital Acquisition.

28.     A Statement of Information with the office of the Secretary of State filed on September 8, 2022 reveals that there are two members of the Board of Directors of Victor Valley Hospital Acquisition: Dr. Kali Chaudhuri and William Thomas. Upon information and belief, Victor Valley Hospital Acquisition is owned in whole or in majority by one or both of those directors.

29.     To date, neither the KPC ESOP Committee nor any other ESOP fiduciary has ever disclosed information to the participants about the amount of the sale or the price per share in the 2021 Transaction.

30.     The amount of sale of KPC stock in the 2021 Transaction will directly affect the amount of benefits that are ultimately paid to the ESOP participants once the proceeds from the sale are distributed to participants.

31.     In Amendment No. 2021-1 dated December 29, 2021, KPC amended a number of terms the ESOP Plan Document, most notably provisions that would affect the timing and manner of the termination and distribution of proceeds of the ESOP. Additionally, as of December 31, 2021, Amendment No. 2021-1, renamed

the ESOP to the "KPC Healthcare Profit Sharing Plan."  Upon information and belief, these changed plan terms have not been disclosed to the ESOP participants or at least were not disclosed in writing to all ESOP participants.

**Plaintiff Requests Documents About the Plan**

32.     In an effort to learn more information about the sale, Plaintiff Truong decided to submit a request for documents.

33.     By a letter dated November 15, 2022, sent by certified mail on November 16, 2022 to the KPC ESOP Plan Administrator and the KPC ESOP Committee pursuant to and referencing ERISA § 104(b) and 404(a)(1), Plaintiff Truong requested that the Plan Administrator provide the documents specified by ERISA 104(b), including (a) the latest updated summary plan description, (b) the latest full annual report (i.e. the Form 5500), (c) summary annual reports for the Plan, (d) any trust agreement, (e) other instruments under which the Plan is established or operated, including any amendments.

34.     Among the documents specifically requested by Ms. Truong's November 16, 2022 letter was any valuation or other document used to determine the price at which her shares had been allocated and a copy of the most recent valuation and other documents setting forth how the value of her shares was determined.  Her letter specifically explained why such valuation documents were subject to request pursuant to ERISA § 104(b)(4).  In support, her letter cited several cases including two in this District that specifically addressed this issue.

35.     Plaintiff's November 16, 2022 letter was received at the address in the SPD for KPC Healthcare by no later than November 18, 2022.

36.     In a letter dated December 14, 2022, Theodore M. Becker, a partner at the law firm of McDermott Will & Emery in Chicago, Illinois responded to Plaintiff's November 15, 2022 letter.

37.     Enclosed with December 14, 2022 letter were some of the documents that Plaintiff had requested.  Specifically, the letter enclosed the following documents:

> (a)     A Summary Plan Description, which was dated September 1, 2017;
>
> (b)     The Plan Document effective April 1, 2015 along with several amendments;
>
> (c)     The Trust Agreement with an effective date of April 1, 2015;
>
> (d)     The most recently filed Form 5500 annual report, which was the 2020 Form 5500 filed on September 7, 2022;
>
> (e)     The Plan's then-current Summary Annual Report;
>
> (f)     Ms. Truong's most recent ESOP participant account statement.

38.     Mr. Becker's December 14, 2022 letter advised that the Plan Administrator would not provide copies of the valuation that Ms. Truong had specifically requested.

39.     Mr. Becker's December 14, 2022 letter suggested that Ms. Truong contact counsel for the Class in the *Gamino v. KPC* case.

40.     Pursuant to Section 2.4(m) of the Trust Agreement for the Plan, the Trustee had the obligation to report the fair market value of all property held by the Trust Fund in the Plan, as determined by the Trustee.

41.     Pursuant to Section 2.4(n) of the Trust Agreement for the Plan, the Trustee had the obligation to provide an annual statement of account to the Plan Administrator (i.e. the ESOP Committee).

42.     Pursuant to Section 2.4(n) of the Trust Agreement for the Plan, the Plan Administrator (i.e. the ESOP Committee) as well as the Company (i.e. KPC Healthcare) had the right to request access to "all accounts, books and records related to [the]" investments of the Plan and "any information related to the Trust Fund.  Section 2.4(n) of the Trust Agreement also specified that any valuation of

COMPLAINT                                                                                              11

securities that were not traded on a "generally recognized market" for "Employer Securities" had to be valued by a "Qualified Independent Appraiser (as described by Section 401(a)(28)(C) of the [Internal Revenue] Code" retained by the Trustee and reviewed and finalized by the Trustee in accordance with Section 3(18) of ERISA."

43.     Additionally, Section 2.4(n) of the Trust Agreement also required that any accounting (including the valuation of such Employer Securities) had to be provided to the Company or Plan Administrator and the Company or Plan Administrator had the opportunity within 60 days to approve that accounting.

44.     As a result of these provisions, the Plan Administrator (i.e. the ESOP Committee Defendants) were either provided with a copy of the valuations of Employer Securities or had the ability to request the valuations of the Employer Securities prepared by the Qualified Independent Appraiser retained by the Trustee.

45.     Pursuant to Section 9.10 of the 2015 Plan document, the value of a Participant's Account Balance "consists of that proportion of the net worth (at fair market value) of the Trust Fund which the net credit balance in his account bears to the total net credit balance in the Accounts of all Participants."

46.     Pursuant to Section 10.6 of the 2015 Plan Document, as relevant here "fair market value" means "the value of the Employer Securities (i) determined as of the date of the exercise of the option if the exercise is by a Disqualified Person, or (ii) in all other cases, determined as of the most recent Accounting Date." Section 10.6 of the 2015 Plan Document further provides that this value must be based on the valuation prepared by a Qualified Independent Appraiser hired by the Trustee.

47.     The December 29, 2021 Amendment, added a new Section 12.9 to the terms of the Plan which eliminated the ability of a participant to receive a distribution from the Plan in the form of Employer Securities.  As a result, Section

COMPLAINT                                                                    12

12.9 requires that a participant's Employer Stock would be liquidated and benefits paid in cash, the amount of which will be the proceeds from the 2021 Transaction "less any administrative expenses of the Plan paid from the Trust."

48.    In order for the 2021 Transaction by which the Plan sold its shares to the Victor Valley to qualify for an exemption to and not violate the prohibited transaction provisions of ERISA § 406, 29 U.S.C. § 1106, and for the Trustee to satisfy the fiduciary obligations of ERISA § 404, 29 U.S.C. § 1104, the 2021 Transaction would need to meet the definition of adequate consideration in ERISA § 3(18), 29 U.S.C. 1002(18).  ERISA § 3(18) defines "adequate consideration" to mean, in the case of a security for which there is no generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan…"

49.    There was no generally recognized market for the Employer Securities of KPC Healthcare in 2021. Under the terms of the Plan, specifically Section 10.6, fair market value must be based on the opinion of a Qualified Independent Appraiser.  As such, the amount of a participant's account in the Plan and the amount of the benefits that will ultimately be distributed to participants from the 2021 Transaction will be based on the amount at which the Employer Securities in the participant's Plan account were valued by the Qualified Independent Appraiser.

50.    Based on these provisions, the valuations of Employer Securities prepared by the Qualified Independent Appraiser (including specifically any valuation that was used to determine the amount of cash that would be allocated to Plaintiff's account as part of the 2021 ESOP Transaction in exchange for her Employer Stock and/or the amount she will receive as a lump sum payment following the termination of the Plan) are instruments under which the Plan is established or operated.

**Select Provisions of the Plan Document**

*Definitions*

51.    Article I of the Plan Document defines the following terms as follows:

a.    **ESOP Committee**: "ESOP Committee" means the KPC Healthcare Holdings, Inc. Employee Stock Ownership Plan Committee, which members are appointed by the Board, as from time to time constituted.

b.    **Fiduciary**: "Fiduciary" means any person who: (a) exercises any discretionary authority or discretionary control and management of this Plan or exercises any authority or control and management or disposition of Plan assets; (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Trust or has any authority or responsibility to do so; or (c) has any discretionary authority or discretionary responsibility in the management of this Plan and the Trust, including, but not limited to, the Trustee, the ESOP Committee, and any person designated under ERISA Section 405(c)(1)(B).

c.    **Plan Administrator**: "Plan Administrator" is the ESOP Committee unless the Company designates another person or persons to hold the position of Plan Administrator. In addition to its other duties, the Plan Administrator has full responsibility for compliance with the reporting and disclosure rules under ERISA.

d.    **Trust**: "Trust" means the KPC Healthcare, Inc. Stock Ownership Trust which is and becomes a part of this Plan.

e.    **Trustee**: "Trustee" means the trustee or trustees acting at the time in question under the Trust, and its or his or her or their successor(s) as such.

52.    Section 11.15 of the Plan Document provides that the "Named Fiduciaries" of this Plan are (1) the Trustee, (2) the ESOP Committee, (3) the

Appeal Committee (if appointed), and (4) any Investment Manager appointed hereunder.

*The ESOP Committee*

53.    Section 9.1 of the Plan Document provides that "the Company [i.e. KPC Healthcare] may appoint an ESOP Committee to administer the Plan. In the absence of an ESOP Committee, the Board of Directors assumes the powers, duties and responsibilities of the ESOP Committee."

54.    Section 9.3 of the Plan Document provides that "the ESOP Committee is empowered to assist the Trustee to satisfy and operate this Plan in accordance with the terms of this Plan, the Trust, the Code, and ERISA."

55.    Section 9.4 of the Plan Document provides that the ESOP Committee has full discretion and authority to perform the following powers and duties, among others:

      a.    To engage the service of agents whom it may deem advisable to assist it with the performance of its duties.

      b.    To engage the services of an Investment Manager or Managers (as defined in ERISA Section 3(38) each of whom will have full power and authority to manage, acquire or dispose (or direct the Trustee with respect to acquisition or disposition) of any Plan asset under its control.

      c.    To construe and interpret this Plan and the rules and regulations adopted and to answer all questions arising in the administration interpretation and application of this Plan document and documents related to this Plan's operation.

      d.    To direct the Trustee to sell or exchange Employer Securities held in the Unallocated Employer Securities Account of an Exempt Loan; and

e.      To establish procedures, correct any defect, and resolve any inconsistency in such manner and to such extent as shall be necessary or advisable to carry out the purpose of this Plan.

56.    Section 9.6 of the Plan Document provides that "the decision of a majority of the members of the ESOP Committee appointed and qualified controls."

57.    Section 9.10 of the Plan Document provides as follows: "The value of each Participant's Account Balance consists of that proportion of the net worth (at fair market value) of the Trust Fund which the net credit balance in his Account bears to the total net credit balance in the Accounts of all Participants. For purposes of a distribution under this Plan, the value of a Participant's Account Balance will be determined in accordance with the distribution procedures adopted by the ESOP Committee."

58.    Section 10.6 defines "Fair Market Value" and requires that "The Trustee must determine fair market value of Employer Securities for all purposes of this Plan by engaging the services of an independent appraiser or independent financial advisor ("independent party"). The ESOP Committee shall rely upon a determination of valuation of Employer Securities made by the independent party selected by the Trustee."

*Trustee*

59.    Section 11.15 of the Plan Document provides that "[t]he ESOP Committee shall have the sole responsibility for the administration of this Plan"

60.    Section 11.16 of the Plan Document provides that "the Trust Fund must be valued as of each Accounting Date and in addition, as of transaction date with any Disqualified Person if required by the prohibited transaction rules, or on such other dates as determined by the ESOP Committee. … For purposes of each such valuation, the assets of the Trust Fund shall be valued at their respective current fair market value…"

COMPLAINT                                                                                        16

**Select Provisions of Amendment No. 2021-1 (dated December 29, 2021)**

61.     Paragraph 1 of the December 29, 2021 Amendment to the Plan amends the Preamble to the 2015 Plan Document to provide in part as follows: Notwithstanding any other provision of this Plan to the contrary, effective as of the Termination Date, the Plan shall no longer constitute an "employee stock ownership plan" as defined in Section 4975(e)(7) of the Code or Section 407(d)(6) of ERISA and shall be converted at such time into, and shall thereafter constitute, solely a profit sharing plan that is intended to satisfy the requirements of Section 401(a) of the Code. The Plan is hereby renamed the "KPC Healthcare, Inc. Profit Sharing Plan."

62.     Paragraph 12 of the December 29, 2021 Amendment to the Plan amended Article XII of the 2015 Plan Document to add a new Section 12.9 that includes the following provisions:

(a)     Termination. Effective upon the Termination Date, the Plan shall be terminated.

(c)     Administration and Termination Distributions, Generally. Subject to the provisions of the Code and the lawful rules and regulations promulgated thereafter, the administrative provisions of this Plan shall continue to be operative on and after the Termination Date and through the date that all affairs of this Plan, including distribution of assets, are fully concluded, except that benefit payments shall not commence after the Termination Date unless otherwise directed by the Company or as otherwise provided in this Section 12.9. In this regard:

(i)     On and after the Termination Date, a Participant shall have no right to receive a distribution in the form of Employer Securities.

> (ii)   Except as otherwise provided in this Section 12.9, the balance of Participant and Beneficiary Accounts, less any administrative expenses of the Plan paid from the Trust, will be distributed in a single lump sum cash payment as soon as administratively feasible following receipt by the Plan Administrator of the Determination Letter.

**Select Provisions of the Trust Agreement**

63.   The Trust Agreement is one of the documents governing the Plan within the meaning of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

64.   Section 2.2 of the Trust Agreement provides that the Trustee "is the sole discretionary fiduciary with respect to borrowing money with respect to the purpose of purchasing Employer Securities and for the purchase or sale of Employer Securities."

65.   Section 2.4 of the Trust Agreement provides that the Trustee has "full discretion and authority" to do the following:

> (a)   To invest the Trust Fund primarily in Employer Securities (provided the Trustee does not pay in excess of "adequate consideration" and such purchase of Employer Securities would not otherwise constitute a "prohibited transaction" as such terms are defined by ERISA and the Code)....

> (h)   To vote Employer Securities as provided by the Plan, and any other stocks, bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney.

> (i)   To contract or otherwise enter into transactions between him, as Trustee, and the Company or any Employer, or any Company shareholder or other individual, for the purpose of acquiring or selling Employer Securities

COMPLAINT                                                                18

and, subject to the provisions of Section 2.3 herein and the Plan, to retain such Employer Securities.

66.     Section 2.4(n) of the Trust Agreement requires the Trustee to furnish the Plan Administrator, Company or Employer with any information related to the Trust Fund as directed by the Plan Administrator. Section 2.4(n) of the Trust Agreement also requires the Trustee to provide an accounting as to the valuation of all Employer Securities and provides that the accounting is not approved until the Plan Administrator has approved the accounting in writing or until 60 days has passed from delivery of the accounting.

67.     Section 2.7 of the Trust Agreement provides that "upon termination of the Plan, the powers, rights and duties of the Trustee hereunder shall continue until all Trust Assets have been liquidated and distributed out of the Trust.

68.     Section 3.4 of the Trust Agreement provides that the Trustee shall make all distributions under the Plan in accordance with the direction of the Plan Administrator.

69.     Section 4.1 of the Trust Agreement provides that "the Trustee shall value the Trust Fund in accordance with the Plan."

70.     Section 6.3 of the Trust Agreement, entitled "Duties of Resigning or Removed Trustee and of Successor Trustee," requires the resigning or removed Trustee to "promptly and transfer the assets of the Trust Fund to the successor Trustee."  Section 6.3 of the Trust Agreement also requires "the resigned or removed Trustee to furnish to the Company and the successor Trustee an account of its administration of the Trust from the date of its last account."

71.     Section 6.4 of the Trust Agreement provides that the Company shall fill any vacancy in the office of Trustee.

72.     Section 8.3 of the Trust Agreement provides that "[i]f the Plan is terminated, all provisions of the Trust [Agreement] nevertheless shall continue in effect until the Trust Fund has been distributed by the Trustee. If after all liabilities

COMPLAINT                                                                              19

of the Plan to Plan Participants and their beneficiaries have been satisfied any residual assets remain, those assets shall be used for the benefit of the Plan Participants. Upon termination of the Plan, the Trustee shall first reserve such reasonable amounts as it may deem necessary to provide for the payment of any expense or fees then or thereafter chargeable to the Trust Fund."

73.    Section 8.2 of the Trust Agreement requires that any amendments be in writing and executed by both the Trustee and the Company.

74.    The Trust Agreement has not been amended since it was initially adopted in 2015.

**Select Provisions of the Summary Plan Description**

75.    The 2017 SPD, which was described as the most current version of the SPD, states that Alerus Financial is the Trustee.

76.    The 2017 SPD does not identify the Plan Administrator.

77.    Since the September 1, 2017 date of the SPD, the Plan has been amended twice, once on December 8, 2017 (Amendment No. 2017-2) and again on December 29, 2021 (Amendment No. 2021-1).

**COUNT I**
**Failure to Disclose Information Required by ERISA § 102, 29 U.S.C. § 1022**
**and in Violation of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1),**
**Against the ESOP Committee Defendants as the Plan Administrator**

78.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

79.    As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 102 and 104(b), 29 U.S.C. § 1022 and 1024(b).

80.    ERISA § 102(a), 29 U.S.C. § 1022(a) mandates that an SPD "be furnished to participants and beneficiaries as provided in [ERISA 104(b), 29 U.S.C. §] 1024(b)" and include the information set forth in ERISA § 102(a) & (b). The DOL Regulation, 29 C.F.R. § 2520.102-3, governing the "contents of the

COMPLAINT                                                                 20

summary plan description," requires that "the summary plan description must accurately reflect the contents of the plans" and sets forth specific information that must be required in the SPD.

81.    Pursuant to ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) the Plan Administrator was required to furnish a current version of the SPD and any modifications and changes (A) to new participants within 90 days after that person became a participant and (B) to every participant in the Plan with an updated copy of an SPD to extent that there had been changes within the last 5 years concerning information described in 29 U.S.C. § 1022.

82.    As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), the ESOP Committee Defendants had fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

83.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

84.    An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

85.    The Ninth Circuit has recognized that a participant in an ERISA plan is entitled to know exactly where he stands with respect to the plan, including the benefits to which he or she may be entitled, the circumstances which may preclude

him from obtaining benefits, what procedures he must follow to obtain benefits, and *who are the persons to whom the management and investment of his plan funds have been entrusted.*

86.   At the time this lawsuit was filed, the ESOP's Summary Plan Description dated September 1, 2017 (the "2017 SPD") was most recent SPD distributed to participants and the one provided in response to Plaintiff's November 2022 ERISA § 104(b) request in December 2022.  The Plan Administrator only issued an updated Summary Plan Description (i.e. after the 2017 SPD) only after this lawsuit was filed.  The Plan Administrator sent an updated SPD to participants in January 2024 only because this lawsuit was filed.

87.   Since the time of the issuance of the 2017 SPD, KPC has adopted at least two amendments to the Plan: (a) Amendment No. 2017-2 dated December 8, 2017 and (b) Amendment No. 2021-1 dated December 29, 2021.

88.   No Summary of Material Modifications ("SMM") were provided to Plaintiff in response to her November 14, 2022 request under ERISA § 104(b)

89.   By failing to provide an SPD that provides the information required by ERISA § 102 and the DOL Regulations and/or by failing to provide an SMM and/or by failing to update the SPD with correct information, the ESOP Committee Defendants, as the Plan Administrator, violated ERISA § 102, 29 U.S.C. § 1022, ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) and ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).[1]

## COUNT II
### Failure to File Annual Report in Violation of ERISA § 104, 29 U.S.C. § 1024
### Against the ESOP Committee Defendants as the Plan Administrator

90.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

---

[1] After the Plan Administrator issued an updated SPD in January 2024, Plaintiff agreed that this claim was moot other than with respect to an award of attorneys' fees and expenses to Plaintiff.

COMPLAINT                                                                 22

91.     As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 104(a) & (b), 29 U.S.C. § 1024(a) & (b).

92.     Pursuant to ERISA § 104(a)(1), 29 U.S.C. § 1024(a)(1), the plan administrator is required to file with the Secretary of the United States Department of Labor the annual report (i.e. the Form 5500) within 210 days after the close the plan year.  Once filed, the Secretary of the Department of Labor is required to make such annual reports available for inspection to the public.

93.     Pursuant to ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), the plan administrator is required to provide a copy of the summary annual report to each participant and to each beneficiary receiving benefits under the plan, a copy of the summary annual report.

94.     Under the terms of the Plan, the Plan Year ends August 31.  As a result, the Form 5500 is due by the following March 1.

95.     The Plan Administrator has repeatedly filed the Form 5500 late. For the Plan Year ended August 31, 2020, the Form 5500 was not filed until September 7, 2022 and was filed under the DOL's Delinquent Filer Voluntary Compliance Program (which requires a payment of a penalty). For the Plan Year ended August 31, 2019, the Form 5500 was not filed until May 17, 2021.

96.     The Form 5500 Annual Report for the year ended August 31, 2022 was due by March 1, 2023. As of July 31, 2023, the Department of Labor had not published the Form 5500 for the KPC ESOP. Upon information and belief, this Form 5500 was either not filed or was not filed timely.

97.     By failing to file an annual report as required by ERISA § 104, the ESOP Committee Defendants, as the Plan Administrator, violated ERISA § 104(a), 29 U.S.C. § 1024(a).

**COUNT III**

**Failure to Provide Documents Upon Request Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) Against the ESOP Committee Defendants as Plan Administrator**

98.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

99.    ERISA § 104(b)(4), 29 U.SC. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy" of certain enumerated documents as well as "other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the Request.

100.    The Ninth Circuit has also recognized that a fiduciary's duty under ERISA § 404(a)(1)(A) to disclose is not limited to those specified in the statute, but extends to additional disclosures to the extent that they relate to the provision of benefits or the defrayment of expenses.

101.    By a letter dated November 15, 2022, sent by certified mail on November 16, 2022 to the KPC ESOP Plan Administrator and the KPC ESOP Committee pursuant to and referencing ERISA § 104(b) and 404(a)(1), Plaintiff Truong requested that the Plan Administrator provide the documents specified by ERISA 104(b). Among the documents specifically requested by Ms. Truong's letter was any valuation or other document used to determine the price at which her shares had been allocated and a copy of the most recent valuation and other documents setting forth how the value of her shares was determined.  Plaintiff's letter was received at the address in the SPD for KPC Healthcare by no later than November 18, 2022.

102.    In a letter dated December 14, 2022, Theodore M. Becker, a partner at the law firm of McDermott Will & Emery in Chicago, Illinois responded to

Plaintiff's November 15, 2022 letter presumably on behalf of the Plan Administrator.

103.   Enclosed with December 14, 2022 letter were some of the documents that Plaintiff had requested. Some of the documents that were provided, such as the 2017 SPD (which was identified as the "current summary plan description"), were outdated.  Additionally, Mr. Becker advised that the Plan Administrator would not provide copies of the valuations that Ms. Truong had specifically requested.

104.   Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c).

105.   Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable to the requesting participant in amount of up to $110 per day and the court may order such other relief as the court deems proper.

106.   As a result of the Plan Administrator's failure to produce the requested documents, the Plan Administrator should be required to pay up to $110 per day to Plaintiff and also be ordered to provide the documents that if failed to provide.

107.   By breaching their fiduciary duties to Plaintiff Truong pursuant to ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), the ESOP Committee Defendants should be liable via surcharge to the equivalent of the penalty under ERISA § 502(c).

**COUNT IV**
**Breach of Fiduciary Duty of ERISA § 404(a)(1)(A), (B), and (D),**
**29 U.S.C. § 1104(a)(1)(A), (B) and (D)  Against Defendant Alerus as Trustee**

108.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

109.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence"  and "(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."

110.   The Supreme Court in *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–43(1985) explained that the "statutory duties imposed on the trustees" under ERISA included "the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information and avoidance of conflict of interest."

111.   As the Ninth Circuit noted in *Acosta v. Pac. Enterprises,* 950 F.2d 611, 620 (9th Cir. 1991), ERISA does not define plan assets nor do the Department of Labor regulations. Additionally, the Ninth Circuit rejected a definition of "assets of the plan" that would "encompass[] only financial contributions received by the plan administrators." Instead, the Ninth Circuit uses "a more functional approach" and "determine[] whether a particular item constitutes an 'asset of the plan,'" by "whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries."

112.   Based on footnote 2 in the Committee Defendants' Reply on their Motion to Dismiss (ECF No. 40), Alerus never provided the Committee Defendants with the valuation report for the 2021 Transaction.  Based on a statement by counsel for the Committee Defendants, Alerus also did not provide the successor Trustee with the valuation report for the 2021 Transaction.

113.   Section 6.3 of the Trust Agreement, entitled "Duties of Resigning or Removed Trustee and of Successor Trustee," requires the resigning or removed Trustee to "promptly and transfer the assets of the Trust Fund to the successor

COMPLAINT                                                                                       26

Trustee."  The records of the Plan, including the valuation reports, were one of the assets of the Plan and Trust.  As part of its fiduciary duties as Trustee, Alerus was required to transfer those records to the successor Trustee.

114.    Additionally, Section 6.3 of the Trust Agreement requires "the resigned or removed Trustee to furnish to the Company and the successor Trustee an account of its administration of the Trust from the date of its last account." In order to provide a proper account of the Trust and part of its fiduciary duties as the Trustee, Alerus should have provided the valuation report(s) to the Company and the successor Trustee.

115.    Section 2.4(n) of the Trust Agreement also requires the Trustee to provide an accounting as to the valuation of all Employer Securities and provides that the accounting is not approved until the Plan Administrator has approved the accounting in writing or until 60 days has passed from delivery of the accounting. In order to provide a proper accounting to the Plan Administrator while it was named the Trustee, Alerus should have provided the Plan Administrator with a copy of the valuation report(s), including the valuation report for the 2021 Transaction.

116.    Section 2.4(n) of the Trust Agreement requires the Trustee to furnish the Plan Administrator, Company or Employer with any information related to the Trust Fund as directed by the Plan Administrator. According to footnote 2 in the Committee Defendants' Reply on their Motion to Dismiss (ECF No. 40), after Alerus ceased to be the Trustee, the Committee Defendants attempted to obtain the valuation report used by Alerus in connection with the 2021 Transaction, but Alerus refused to provide the report. As "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan," when a person "retain[s] control over Plan assets," courts have held that person is or remains a fiduciary.  By retaining control over the records of the Plan,

COMPLAINT                                                                                                27

Alerus remained a fiduciary with respect to the records of the Plan that it retained, including when the Committee made the request in November 2023.

117.   By failing to provide the valuation report for the 2021 Transaction as set forth above, Alerus breached its fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

118.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff is entitled to sue Defendant Alerus pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including any equitable or remedial relief as the Court may deem appropriate.

119.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff is entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue Defendant Alerus for any appropriate equitable relief,

**COUNT V**

**Knowing Participation in Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and in Violation of ERISA § 104(b)(4), 29 U.S.C. 1024(b)(4)**

120.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

121.   According to footnote 2 in the Committee Defendants' Reply on their Motion to Dismiss (ECF No. 40), the Committee Defendants never have been in possession of the valuation report for the 2021 Transaction.

122.   According to footnote 2 in the Committee Defendants' Reply on their Motion to Dismiss (ECF No. 40), after Alerus ceased to be the Trustee, the Committee Defendants attempted to obtain the valuation report used by Alerus in connection with the 2021 Transaction, but Alerus refused to provide the report.

123.   Based on footnote 2 in the Committee Defendants' Reply on their Motion to Dismiss (ECF No. 40), Alerus was made aware that the Committee Defendants were attempting to obtain a copy of valuation report in order to comply

with the Committee's obligations as Plan Administrator under ERISA § 104(b)(4) and/or to fulfill the Committee's fiduciary duties under ERISA § 404(a)(1).

124.   Based on the foregoing, Defendant Alerus was aware of facts sufficient to establish and either knew or should have known that its failure to transfer records to the successor Trustee or provide those records to the Plan Administrator constituted a breach of fiduciary duty and would cause the Plan Administrator and/or the successor Trustee to breach their respective fiduciary obligations and/or violate ERISA § 104(b)(4). By knowingly participating in such breaches and violations, Defendant Alerus is subject to appropriate equitable relief.

125.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff is entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue Defendant Alerus for any appropriate equitable relief, including an order requiring that Alerus provide any materials subject to ERISA § 104(b)(4) or ERISA § 404(a)(a)(1) to either the Committee Defendants (so that they can be provided to Plaintiff) or to provide those materials directly to Plaintiff.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that judgment be entered against Defendants on each claim and be awarded the following relief:

A.   Declare that Defendants have each breached their fiduciary duties under ERISA and violated various statutory provisions of ERISA;

B.   Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations and duties;

C.   Require each of the Committee Defendants and Alerus to engage in training with respect to their fiduciary obligations;

D.   Order the Plan Administrator to file an Annual Report pursuant to ERISA § 104, 29 U.S.C. § 104 and to timely file such reports in the future.

E.      Order that Alerus provide any materials that must be disclosed to Plaintiff pursuant to ERISA § 104(b)(4) or ERISA § 404(a)(a)(1) and that are in the possession of Alerus (but not the Plan Administrator) either directly to Plaintiff or to the Committee Defendants (so that they can be provided to Plaintiff);

F.      Order that the Plan Administrator provide to Plaintiff any materials that must be disclosed to Plaintiff pursuant to ERISA § 104(b)(4) or ERISA § 404(a)(a)(1) to the extent that such materials were not provided in response to Plaintiff's November 2022 request;

G.      Award Plaintiff Truong the statutory amount of $110 per day, per violation, for the failure to provide each of the requested documents that the Plan Administrator failed to provide and as necessary require the Committee Defendants and/or Alerus pay that amount via surcharge;

H.      Declare that any indemnification agreement that would cause any amount awarded against any of the Defendants to reduce the amount in the Plan violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

I.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

J.      Award pre-judgment interest and post-judgment interest; and

K.      Award such other and further relief that the Court determines that Plaintiff is entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

Dated: February 1, 2024                    Respectfully submitted,

_____
R. Joseph Barton (SBN 212340)
BARTON & DOWNES LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@bartondownes.com

*Attorneys for Plaintiff*